NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000226
15-JUN-2018
08:15 AM

NO. CAAP-17-0000226

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
PATRICK WILLIAMS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 15-1-0047)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Patrick Williams (**Williams**) appeals from a March 21, 2017 Judgment of Conviction and Probation Sentence, entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] After a jury trial, the Circuit Court convicted Williams of one count of Assault in the Third Degree (**Assault 3**), in violation of Hawaii Revised Statutes (**HRS**) § 707-712(1)(a).[2]

Williams raises three points of error on appeal, contending that: (1) the Circuit Court plainly erred in failing

---

[1] The Honorable Rom A. Trader presided.

[2] HRS § 707-712(1)(a) (2014) provides that "[a] person commits the offense of assault in the third degree if the person . . . [i]ntentionally, knowingly, or recklessly causes bodily injury to another person[.]"

to strike improper statements made by the prosecutor during opening statement; (2) the Circuit Court erred in admitting certain X-rays into evidence without the necessary foundation; and (3) there was insufficient evidence to sustain Williams's conviction of Assault 3.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Williams's points of error as follows:

(1) During opening statements, the prosecutor stated, *inter alia*, that after the complaining witness (CW) underwent surgery at Tripler, he was "subsequently transferred to another family and reunited with his mother." Counsel later reiterated that "[CW] is ultimately reunited down the road with his mother." Williams argues that the Circuit Court plainly erred by failing to strike these comments, which were the result of prosecutorial misconduct, and the court's failure to do so prejudiced his substantial rights. Because Williams did not object to the State's comments, we review this point for plain error. See Hawaii Rules of Penal Procedure (**HRPP**) Rule 52(b).

> "An opening statement merely provides an opportunity for counsel to advise an outline for the jury, the facts and questions in the matter before them." *State v. Simpson*, 64 Haw. 363, 369, 641 P.2d 320, 324 (1982) (citations omitted). *See also State v. Greyson*, 70 Haw. 227, 232 n. 4, 768 P.2d 759, 762 n. 4 (1989). Hence, "[t]he purpose of an opening statement is to explain the case to the jury and [to] outline the proof. It is not an occasion for argument." 8A J. Moore, Moore's Federal Practice (Moore's ) ¶ 29.1.06, at 29.1-76 (2d ed. 1996).

> Ordinarily, "the scope and extent of the opening statement is left to the sound discretion of the trial judge." *Id*. However, the trial court should "exclude

2

> irrelevant facts and stop argument if it occurs." *Id.* The
> State should only refer in the opening statement to evidence
> that it has "a genuine good-faith belief" will be produced
> at trial. *Greyson*, 70 Haw. at 232 n. 4, 768 P.2d at 762 n.
> 4. If improper remarks are made during the opening
> statement, "[t]he test for determining the existence of
> prosecutorial misconduct in [the] opening statement is
> whether the improper remarks prejudicially affected the
> defendant's substantive rights." Moore's, supra, ¶ 29.1.06,
> at 29.1-77.

State v. Sanchez, 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App.
1996) (citations omitted).

Moreover, "[w]here the nature of the prosecutorial
misconduct alleged is the failure of the prosecutor to prove or
attempt to prove matters referred to in opening statements, . . .
the burden [is] on the defendant to show bad faith on the part of
the prosecutor, unless the fundamental rights of the defendant
were substantially prejudiced." State v. Moore, 82 Hawai'i 202,
213, 921 P.2d 122, 133 (1996).

> In examining the record to determine whether there is a
> reasonable possibility that the error complained of might
> have contributed to a defendant's conviction, thereby
> warranting, at the very least, a new trial, we consider:
> (1) the nature of the conduct; (2) the promptness of a
> curative instruction; and (3) the strength or weakness of
> the evidence against the defendant.

State v. Valdivia, 95 Hawai'i 465, 479, 24 P.3d 661, 675 (2001)
(citation omitted).

Valdivia provides guidance. During opening argument,
the prosecution stated that Valdivia went on a rampage of terror,
which, "[w]ithin a one-hour period, . . . almost killed at least
100 people." Id. The trial court overruled defense counsel's
objection that the statement was argumentative, and the court
gave no curative instruction. Id. On appeal, Valdivia argued
that there was no support in the evidence for the prosecution's
assertions. Id. The supreme court held that the contested

comments were improper and made in bad faith, with the intention of inflaming the passions of the jury.  Id. at 481, 24 P.3d at 677.  However, the misconduct was harmless beyond a reasonable doubt because the circuit court instructed the jury no fewer than three times that counsels' statements and arguments were not evidence and not to be considered during deliberations; there was no evidence that the jury failed to adhere to those instructions. Id.

In this case, the State's comments were improper because the fact that CW was taken out of Williams's custody is unrelated to any of the elements of the offense.  However, the Circuit Court instructed the jury - both before opening statements and during its general jury instructions, to refrain from considering counsel's comments as evidence.  There is no basis to conclude that the jury failed to adhere to the instructions, and based on an examination of the entire record, we conclude that the prosecutor's improper statements were harmless beyond a reasonable doubt.

(2)  Even assuming that the Circuit Court erred in admitting the X-rays of CW's femur bone into evidence due to improper foundation, any such error was harmless beyond a reasonable doubt.  Expert testimony of two physicians, Dr. Norman Odell Polk (**Dr. Polk**) and Dr. Jennifer Doerrige (**Dr. Doerrige**), was presented, without objection, and described the nature (diagnosis) and extent of CW's injuries, including testimony that a femoral fracture is notoriously painful and would cause a great deal of distress in most children.  X-ray results are the type of

data that doctors reasonably rely on in rendering a diagnosis and both doctors testified as to their observations that CW suffered a fractured femur. In addition, two nurses testified as to swelling and obvious deformity in CW's thigh; and one nurse and doctor testified that CW was crying and in distress. Thus, we conclude that there is no reasonable possibility that any error in admitting the X-rays into evidence might have contributed to Williams's conviction of Assault 3.

(3) Williams argues that the evidence was insufficient to support his conviction because there was not any evidence that he caused bodily injury to CW. We disagree.

Doctors Doerrige and Polk, who treated CW, diagnosed CW's injury as a transverse, angulated, significantly displaced fracture of the left femur. As noted above, Dr. Doerrige testified that the injury was notoriously painful, would cause most children to cry, and would prevent a child from sleeping through the night, standing, or walking. Yet, the evidence shows that Williams waited approximately ten hours after CW sustained the injury to take him to the hospital. Williams was CW's sole caretaker.

At the hospital, Williams sat off to the side, very aloof, texting on his cell phone, despite the fact that CW was in a great deal of distress and pain. When CW returned from being X-rayed, crying, Williams gave him a "fist pump [sic]."

Williams explained to hospital staff that CW was jumping on a bed when he fell two to three feet onto a carpeted floor. Doctors Doerrige and Polk testified that CW's injuries

were inconsistent with Williams's explanation because such an accident would have created an insufficient amount of force to cause CW's injury. Further, Dr. Doerrige testified that most children do not learn to jump until they are older than CW. In Dr. Polk's opinion, CW's injury was consistent with non-accidental trauma, such as abuse, caused by a blunt force to the back of his thigh.

Viewed in the light most favorable to the State, there is sufficient evidence that Williams at least recklessly caused CW to suffer bodily injury. See HRS § 707-712(1)(a); State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) ("[A]s trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.").

For these reasons, the Circuit Court's March 21, 2017 Judgment of Conviction and Probation Sentence is affirmed.

DATED: Honolulu, Hawai'i, June 15, 2018.

On the briefs:

Taryn R. Tomasa,
Deputy Public Defender,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge